Opinion filed July 10, 2008 











 
 
  
 
 







 
 
  
 
 




Opinion filed July 10,
2008 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00321-CR

                                                    __________

 

                               RODERICK RENE MIRELEZ, Appellant

 

                                                             V.

 

                                         STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 42nd District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 22,051-A

 



 

                                            M
E M O R A N D U M    O P I N I O N

The
jury convicted Roderick Rene Mirelez of aggravated sexual assault of a child,
and the trial court assessed his punishment at confinement for fifteen years. 
We affirm.








In
four counts in the indictment, the State alleged that appellant, on or about
April 27, 2003, committed the offense of aggravated sexual assault of his
girlfriend=s
seven-year-old daughter by the following various manner and means:  by
penetrating the victim=s
sexual organ with his sexual organ, by penetrating the victim=s sexual organ with his
finger, by penetrating the victim=s
sexual organ with his tongue, and by causing his sexual organ to penetrate the
victim=s mouth.  In
its charge, the trial court submitted the counts in the disjunctive to the
jury, and the jury unanimously found appellant guilty of aggravated sexual
assault as alleged in the indictment.

In
his first issue on appeal, appellant challenges the factual sufficiency of the
evidence to support the conviction.   Appellant
contends that there is factually insufficient evidence to support each of the
four various manner and means of committing the aggravated sexual assault
alleged in the indictment.  Appellant argues that his testimony that he did not
commit the sexual assault and his specific testimony denying each alleged
manner and means, together with the inconsistencies in the victim=s testimony and her brother=s testimony, result in
factually insufficient evidence to support the conviction.

To
determine if the evidence is factually sufficient, the appellate court reviews
all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State, 144
S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex.
Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Then, the reviewing court determines whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.

Because
in the charge the trial court did not ask the jury to choose between the four
manner and means alleged, we must review the evidence in a neutral light to
determine if there is factually sufficient evidence to support each manner and
means.  The record reflects that the victim was seven at the time the offense
was alleged to have occurred and that law enforcement officials were able to
date the offense because the victim knew it occurred around the time the
apartment complex she lived in had burned on April 27, 2003.








The
victim testified that she was ten years old at the time of trial.  She stated
that she Atried to
forget some of this.@ 
When she was seven, she lived at the 2121 Apartments with her mother, her older
brother, her younger sister, her younger brother, and appellant.  The victim stated
that appellant had sexually assaulted her before the apartments burned down. 
She testified how appellant would come into her bedroom at night and put his
hands Adown there@ in her Aprivates.@  The victim said that the
private part was Abelow@ the stomach and that her
vagina was the same thing as her private part.  Appellant would touch her and
then Astick@ his hand Ainside@ of her.

The
victim stated that Ait
got worse.@  Appellant
would put his private part in her private part and hurt her.  The victim
testified that Ahis
male thing@ was
appellant=s private
part and that she knew the word Apenis.@  Appellant=s penis was what he put
inside her private part.  When he did this, she tore and bled.  When asked if
his finger and penis were the only two things appellant put inside her private
part, she answered, ANo.@  The victim stated, AHe used to put his face
down there too.@  He
would put his mouth on her private, and he would put his private part in her
mouth.

The
victim stated that sometimes,  if she would roll over Atight@
in her blankets or act like she was waking up, appellant would stop.  However,
he did not always stop.  The victim stated that she did not try to stop
appellant because she was scared.  When her older brother found out, she had
him keep it a secret because she did not want appellant to hurt their mother or
her.

The
victim stated that one time she had gone to the doctor because it hurt when she
went to  the rest room after appellant had touched her.  The doctor had asked
her if anyone was Amessing
with@ her.  She
answered Ano@ because she was afraid
that appellant would hurt her mother and her. 

The
victim testified that they moved after the fire and that Ait@ slowed after that.  Her older brother Abroke the secret@ later after their mother
had Akicked@ appellant out.  She was
afraid even then that appellant would Acome
back@ and hurt them. 
She did not remember telling her older brother about what had happened, and she
could not remember what appellant=s
tattoos looked like or if he had had facial hair.

R.I.P.
testified that he was the victim=s
older brother, that she was just Aa
little bit@ younger
than him, and that he was eleven years old at the time of trial.  R.I.P. stated
that he decided to tell their mother what had happened when he saw a little
girl on the AAmerica=s Most Wanted@ television show who had
the same thing happen to her.  He told because he just Acouldn=t
take it no more.@  The
victim had wanted him to keep it a secret because she was embarrassed.








R.I.P.
stated that, before the fire when they were living in the apartments with
appellant, the victim had told him that appellant was touching her.  R.I.P.
would spy on appellant to try to protect the victim from appellant.  One time
when appellant was on top of the victim, R.I.P. saw appellant get up off of her
and saw that appellant=s
penis was Astanding up@ and coming out of his
boxer shorts.  R.I.P. stated he saw Athis@ happen six or seven times.

Judy
LaFrance testified that she was a certified sexual assault nurse examiner.  She
had examined the victim when the victim was nine years old, two years after the
alleged assault.  When LaFrance used anatomically correct dolls with the
victim, the victim had no confusion about body parts.  The victim told LaFrance
that there had been both oral penetration and other penetration of her female
sexual organ.

LaFrance
also performed a physical examination on the victim.  The victim had given no
history of menstruation, and her exam confirmed that the victim was not having
periods.  There was no evidence of estrogen production.  LaFrance observed and
photographed two Awell-healed
lacerations@ in the
victim=s hymen. 
LaFrance stated that estrogen production would have made the victim=s hymen Avery elasticized.@  Both lacerations were
consistent with the victim=s
history.  There were no injuries to the victim=s
outer genitalia, which was also consistent with the victim=s history and the
well-healed lacerations of her hymen.

Appellant
testified that he had never penetrated the victim=s
female sexual organ with his male sexual organ, his finger, or his tongue and
that he had never caused his male sexual organ to penetrate the victim=s female sexual organ. 
Appellant repeatedly and adamantly denied all the allegations in the
indictment.  Appellant testified in detail how and why he did not talk to the
investigating officer about these allegations.  Appellant maintained his
innocence, stated that he had had no reason to deny any allegations prior to
trial because he had not committed the alleged acts, and testified that the
reason he had not returned the investigating officer=s phone calls was because he was innocent and
his attorney had advised him not to answer any question unless counsel was
present.  Appellant stated that the inconsistencies between his testimony and
the testimony of the State=s
witnesses were due to Asome
conspiracy@ against
him and maintained that the other witnesses were either wrong or lying.








The
jury, as the finder of fact, was the sole judge of the weight and credibility
of the witnesses=
testimony.  Tex. Code Crim.
Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).   We
review the factfinder=s
weighing of the evidence and cannot substitute our judgment for that of the
factfinder.  Cain, 958 S.W.2d at 407; Clewis, 922 S.W.2d
at 133.   Due deference must be given to the factfinder=s determination, particularly concerning the
weight and credibility of the evidence.  Johnson, 23 S.W.3d at 9; Jones
v. State, 944 S.W.2d 642 (Tex. Crim. App. 1996).  This court has the
authority to disagree with the factfinder=s
determination Aonly
when the record clearly indicates such a step is necessary to arrest the occurrence
of a manifest injustice.@ 
Johnson, 23 S.W.3d at 9.

After
reviewing the record in a neutral light, we find that the evidence is factually
sufficient.  A reasonable jury could have reconciled the victim=s testimony (that she did
not tell her brother what had happened and that her brother just figured it
out) with her brother=s
testimony (that the victim had told him what had happened) and found appellant
guilty as charged.  Likewise, a reasonable jury could have rejected appellant=s claim of innocence and
convicted him of the offense based upon the  evidence presented by the State. 
The evidence supporting the verdict is not so weak that the verdict is clearly
wrong and manifestly unjust, and the verdict is not against the great weight
and preponderance of the conflicting evidence.   The first issue is overruled.

Next,
appellant contends that the trial court erred by dismissing a prospective juror
who had  neither been challenged for cause nor struck by appellant or the
State.  Appellant contends that Prospective Juror No. 13 was improperly
excluded, resulting in Prospective Juror No. 35 being sworn in on the panel to
appellant=s detriment.

Appellant
raised this contention in an amended motion for new trial.  At the hearing on
his motion, appellate counsel called trial counsel as a witness.  Trial counsel
testified that he did not strike the prospective juror.  Trial counsel stated
that neither side had challenged the prospective juror for cause.  Trial
counsel explained that he had turned his strike list in to the trial court and
never saw the State=s
strike list.  When Prospective Juror No. 13 did not serve, trial counsel
assumed that the State had struck him.  After the original motion for new trial
was filed, trial counsel saw the State=s
strike list and concluded that the State had not struck Prospective Juror No.
13 because there was a line drawn through the numeral thirteen but not all the
way through the name.  Trial counsel concluded that Prospective Juror No. 13
was Acut
inadvertently.@








The
trial court stated at the hearing that its practice was not to look at each
strike list and compare them but to have each attorney call out the strikes in
chambers.  The trial court would then note the strikes on a list and read the
remaining names to the attorneys as the names of those who would be serving on
the jury.  The trial court noted that the parties had their strike list with
them in chambers during this process and that the attorneys could view any
strike list.  The trial court stated that he marked through Prospective Juror
No. 13=s name and put
an AS@ beside the name because
the State read the number off as a prospective juror it wished to strike.  The
record before this court does not support appellant=s contentions.  The second issue is overruled.

In
his last issue, appellant contends that he was denied the effective assistance
of counsel at trial.  Appellant bases this claim on his assertion in his second
issue that a prospective juror was improperly excused and on trial counsel=s failure to object to the
State=s
cross-examination of him concerning his post-arrest silence and his right
against self-incrimination.

In
order to determine whether appellant=s
trial counsel rendered ineffective assistance at trial, we must first determine
whether appellant has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Wiggins v. Smith, 539 U.S. 510, 520 (2003); Strickland v.
Washington, 466 U.S. 668, 690 (1984); Andrews v. State, 159
S.W.3d 98, 101 (Tex. Crim. App. 2005); Hernandez v. State, 988
S.W.2d 770 (Tex. Crim. App. 1999).   We must indulge a strong presumption that
counsel=s conduct fell
within the wide range of reasonable professional assistance, and appellant must
overcome the presumption that, under the circumstances, the challenged action
might be considered sound trial strategy.  Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002); Stafford v. State, 813 S.W.2d 503,
508-09 (Tex. Crim. App. 1991).








We
have already determined that the record does not support the contention that
the prospective juror was improperly dismissed.  Therefore, appellant has not
established that trial counsel=s
representation fell below an objective standard of reasonableness with regard
to jury selection.  As to appellant=s
other objections, appellant has not overcome the presumption  that trial
counsel=s actions were
based upon sound trial strategy.  Appellant consistently claimed that he was
innocent.  His insistence that he had no need to deny or to confront the
allegations before trial was consistent with his claim of innocence.  In fact,
appellant explained that he had had no Aneed@ to express his innocence
prior to the time of trial because he was innocent.  The record supports the
presumption that, under the facts of this case, trial counsel was proceeding
with appellant=s
claims of innocence as part of his sound trial strategy.  The third issue is
overruled.

The
judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

July 10, 2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.